1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                         SOUTHERN DISTRICT OF CALIFORNIA

9

10    MELISSA CARIN MATHER BOBKA,            Case No.:  17cv2380-GPC-AGS

11                           Debtor-Appellant,
                                             **ORDER AFFIRMING**
12    v.                                     **BANKRUPTCY COURT ORDER**

13    TOYOTA MOTOR CREDIT
      CORPORATION,
14
                                 Appellee.
15

16

17         This case presents an issue of first impression in the Southern District of California

18   and the Ninth Circuit, that is, does a lease assumption agreement under 11 U.S.C. §

19   365(p) remain enforceable following discharge even if the lease assumption was not

20   reaffirmed under 11 U.S.C. § 524(c)?  District and bankruptcy courts outside the Ninth

21   Circuit that have confronted the question all agree that the interplay between these

22   statutes is confusing but disagree on the answer to the question.  The Court concludes that

23   reaffirmation under Section 524(c) is not required where a debtor has properly assumed a

24   lease under Section 365(p)(2).

25

26

27

28
                                          1

This is a bankruptcy appeal brought by Debtor-Appellant Melissa Carin Mather Bobka ("Mather")[1] against Appellee Toyota Motor Credit Corporation. In this appeal, the Court reviews the Memorandum Decision of Chief Judge Laura S. Taylor of the United States Bankruptcy Court for the Southern District of California which found: (1) that Toyota's collection actions did not violate the automatic stay since any such actions took place *after* Mather's bankruptcy had been discharged; (2) that reaffirmation under Section 524(c) is not required when a lease is assumed under Section 365(p)(2); and (3) that—due to waiver by Toyota regarding written notification and a 30-day timing requirement— Mather did actually assume the Lease when she executed the Lease Assumption Agreement. AR[2] 249, 253.

## I. APPELLATE JURISDICTION AND STANDARD OF REVIEW

The district court has jurisdiction to hear this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1).

On appeal, the district court reviews the bankruptcy court's findings of fact for clear error and reviews its conclusions of law de novo. *In re Int'l Fibercom*, 503 F.3d 933, 940 (9th Cir. 2007). Whether the bankruptcy court applied the correct legal standard is a legal issue which is reviewed de novo. *In re Karelin*, 109 B.R. 943, 946 (B.A.P. 9th Cir. 1990).

## II. BACKGROUND[3]

On August 31, 2016, Mather filed a voluntary Chapter 7 bankruptcy petition. AR 10, 16. She was represented by the Doan Law Firm throughout her bankruptcy

---

[1] The Court observes that Appellants' brief refers to Melissa Carin Mather Bobka as "Mather" and will accordingly adopt this shorthand.

[2] AR refers to the Appellate Record in this case.

[3] The facts as stated are largely taken from the Memorandum Decision of the Bankruptcy Judge. The parties do not dispute these facts except for one immaterial factual issue. *See* Dkt. No. 15 at 2. Mather asserts that the Court erred in stating that the Statement of Intention filed with the bankruptcy petition was served on Toyota. The Court agrees with Toyota that this is not a material fact because the bankruptcy court's decision regarding written notification was not based on this fact. *See* AR 269.

proceedings and in this instant appeal.  In her bankruptcy schedules, Mather stated an intention to reaffirm a 2014 Toyota RAV4 ("Vehicle") as a secured debt.  AR 250.  Her schedules erroneously described Toyota as a lender with a claim secured by a lien against the vehicle, when in actuality Toyota was the lessor of the Vehicle.  As such, Mather should have completed part 2 of the Statement of Intention which requires specificity as to her intention to assume the lease of the Vehicle.  *Id.*

Pursuant to Section 365(d)(1), Ms. Mather's chapter 7 trustee had the right to assume the Lease during the first 60 days of the bankruptcy case, but did not do so.  *Id.* As of October 31, 2016, the Vehicle was not an asset of the estate and the automatic stay as to the vehicle was terminated pursuant to Section 365(p)(1).  Section 365(p)(2) provides that where a trustee fails to timely assume a lease, a debtor has the right to attempt assumption by advising her lessor "in writing" of her desire to assume the lease. 11 U.S.C. § 365(p)(2).

Mather did not send any "writing" to Toyota.  However, on September 8, 2016, she called Toyota and requested that she be allowed to continue payments to retain the vehicle.  AR 251.  Toyota's agent, National Bankruptcy Services LLC ("NBS") advised Mather that she needed to assume the lease to retain the vehicle.  On September 16, 2016, the NBS prepared an assumption agreement and sent it to Mather's attorney at the Doan Law Firm.  Mather, who was traveling and attempting a marital reconciliation, did not immediately execute the Lease Assumption Agreement until December 5, 2016.  AR 252 Despite the fact that this may have been untimely under § 365(p)(2)(B), Toyota accepted her request for assumption and acknowledged receipt of the executed document on December 6, 2016.  *Id.*

Mather received her discharge on December 6, 2016, and her case closed on December 12, 2016.  *Id.*  While Mather was not in default on the lease when she entered bankruptcy and made payments during the bankruptcy proceedings, in November 2016

she stopped lease payments despite the execution of the Lease Assumption Agreement in December. Toyota does not dispute that it engaged in collection activity between December 20, 2016 through approximately February 25, 2017. *Id.* The bankruptcy judge observed that Mather provided hearsay testimony that Toyota had called her parent's home while she was traveling prior to her discharge, but that there was no record of any such calls, and particularly that there was no evidence that they related to collection attempts.

On January 2, 2017, Debtor surrendered the vehicle. *Id.* Mather advised Toyota that her bankruptcy precluded collection attempts and that her assumption of the Lease was ineffective as it was not coupled with reaffirmation. On February 25, 2017, Plaintiff, through the Doan Law Firm, requested an Order to Show Cause re: Violation of the Automatic Stay and Violation of the Plan Discharge. AR 253. In that request, Mather alleged significant emotional distress and requested over $50,000 in compensatory and punitive damages, remedial or coercive sanctions as appropriate, and attorneys' fees. The Bankruptcy Court issued the OSC, which was followed by several rounds of briefing and two hearings. *Id.*

On November 16, 2017, the bankruptcy court issued its Memorandum Decision. On November 27, 2017, Mather filed her Notice of Appeal from the bankruptcy court, and elected to have its appeal heard by the United States District Court for the Southern District of California instead of the Ninth Circuit's Bankruptcy Appellate Panel. Dkt. No. 1 at 2. Appellant filed their Opening Brief on February 1, 2018. Dkt. No. 9. Appellee filed it Responsive Brief on March 12, 2018. Dkt. No. 15. Appellant filed a Reply on March 26, 2018. Dkt. No. 16.

## III.    DISCUSSION

The instant bankruptcy appeal addresses three issues: (1) whether Appellant waived a challenge to the bankruptcy judge's order that Toyota did not violate the automatic stay;

(2) whether a Section 365(p) lease assumption must always be coupled with a judicially approved Section 524(c) reaffirmation for personal liability to attach post-discharge; and (3) whether Mather actually assumed the lease.

### A. Waiver of any Argument Challenging that Toyota Did Not Violate the Automatic Stay

Chief Judge Taylor found that Toyota did not violate the automatic stay as the automatic stay had already terminated by the time Toyota commenced collection activities. AR 254. The bankruptcy court found that there was limited hearsay evidence that Toyota may have made calls to Mather between November 9, 2016 and December 12, 2016, but that this evidence was not conclusive and that the calls could have been unrelated to collection activities, such as for Mather's pending Lease assumption or the recovery of the Vehicle. *Id.* Next, the court found that Toyota's transmission to Mather of a lease assumption agreement was not a stay violation because it was requested from the debtor and because it had been transmitted only to the Doan Law Firm and not Mather directly. AR 255.

Appellees contend as a threshold matter that Mather has waived any claim that Toyota violated the automatic stay by failing to challenge this issue on appeal. The Court agrees. Appellant did not raise this issue in her Opening or Reply Briefs. *See* Dkt. Nos. 9, 16. Moreover, Appellant solely framed the "Issue Presented" in this case as "[d]oes 11 USC 365(p) override the discharge protections of 11 USC 524?" Dkt. No. 9 at 1. Accordingly, the Court finds that to the extent Appellant sought to challenge the bankruptcy court's finding that Toyota did not violate the automatic stay, Appellant has waived that argument. *See In re Meehan*, 659 F. App'x 437, 438 (9th Cir. 2016) (citing *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.")).

## B. Section 365(p) Lease Assumption and Section 524 Reaffirmation

### 1. Section 365(p)

The Bankruptcy Abuse Prevention and Consumer Act ("BAPCPA") of 2005 was enacted in October 2005 and added a new subsection (p) allowing the debtor—rather than a trustee—to assume a lease. *See* 11 U.S.C. § 365(p). Prior to the enactment of the Act, the power to assume a lease in a Chapter 7 case was given only to the trustee. *See* 11 U.S.C. § 365(a) ("[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."). If the trustee did not exercise the right of assumption as to a particular lease, a chapter 7 debtor was free to enter into a reaffirmation agreement as to his or her obligations under the lease (with lessor approval), but "assumption" was not an option for the chapter 7 debtor. *See In re Creighton*, 427 B.R. 24, 25 (Bankr. D. Mass. 2007).

Post-BAPCPA, even if a lease is rejected or deemed rejected by a trustee's non-action, a debtor may assume a lease under 11 U.S.C. § 365(p). Section 365(p) specifically addresses the assumption of a personal property lease by a debtor. It provides as follows:

(1) If a lease of personal property is rejected or not timely assumed by the trustee under subsection (d), the leased property is no longer property of the estate and the stay under section 362(a) is automatically terminated.

(2)(A) If the debtor in a case under chapter 7 is an individual, the debtor may notify the creditor in writing that the debtor desires to assume the lease. Upon being so notified, the creditor may, at its option, notify the debtor that it is willing to have the lease assumed by the debtor and may condition such assumption on cure of any outstanding default on terms set by the contract.

(B) If, not later than 30 days after notice is provided under subparagraph (A), the debtor notifies the lessor in writing that the lease is assumed, the liability under the lease will be assumed by the debtor and not by the estate.

(C) The stay under section 362 and the injunction under section 524(a)(2)

shall not be violated by notification of the debtor and negotiation of cure under this subsection.

A lease assumption under Section 365(p) proceeds in several steps:

> [T]he debtor offers to assume the lease obligation, and the lessor decides whether to accept the debtor's offer . . . . If the lessor determines that it is willing to allow the debtor to assume the lease, it will then notify the debtor of this decision, and may condition such assumption on cure of any outstanding defaults on terms set by the contract, however, the lessor is not under any obligation to accept the debtor's offer. Upon being notified of intent to assume an unexpired lease under 11 U.S.C. § 365(p)(2)(A), the lessor is granted safe harbor to contact the debtor with an acceptance and if necessary, negotiate a cure without violating the automatic stay or the discharge injunction. . . .If the parties come to an agreement, the third and final step required by the statute is that a writing between the lessor and the debtor be signed to memorialize the terms of the lease assumption.

*Williams v. Ford Motor Credit Co., LLC*, No. 15-CV-14201, 2016 WL 2731191, at *3 (E.D. Mich. May 11, 2016) (citing *In re Perlman*, 468 B.R. 437, 439 (Bankr. S.D. Fla. 2012) (quotations and citations omitted)).  Section 365(p) does not require a bankruptcy court to review or approve a lease assumption agreement.  *See In re Ebbrecht*, 451 B.R. 241, 245 (Bankr. E.D.N.Y. 2011) ("Neither judicial review nor approval of the lease assumption agreement is required by the Bankruptcy Code or Rules.").  A lease assumed by the chapter 7 debtor becomes a liability of the debtor, and not a liability of the estate. *See id.* (citing 11 U.S.C. § 365(p)(2)(B)).

### 2.    Section 524(c)

Section 524(c) provides a general framework under which a debtor may agree to remain personally liable for a debt obligation following entry of discharge.  Under the Section, the following is required:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if –

> (1) such agreement was made before the granting of the discharge . . .
> (2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;
> (3) such agreement has been filed with the court...
> (4) the debtor has not rescinded such agreement...[and]
> (5) the provisions of subsection (d) of this section have been complied with.

11 U.S.C. § 524(c). Reaffirmation agreements are "contrary to the stated goal of a debtor receiving a fresh start" and thus are "subject to intense judicial scrutiny and must comply with all statutory requirements." *Ebbrecht*, 451 B.R. at 243-44. Among these requirements are *inter alia* that the reaffirmation agreements must contain disclosures contained in Section 524(k), that a debtor may rescind the reaffirmation agreement during a cooling-off period, that the agreement must be filed with the Court accompanied by an attorney's declaration or affidavit stating the agreement represents a fully informed and voluntary agreement by the debtor, and that reaffirmation agreements must be approved by the bankruptcy court. *See Williams*, 2016 WL 2731191, at *4.

### 3. Section 365(p) and Section 524(c)

The primary question in this appeal is whether the bankruptcy court erred by concluding that a lease assumption agreement under Section 365(p) remains enforceable following discharge even if the lease assumption agreement was not reaffirmed under Section 524(c). Bankruptcy and district courts around the country have struggled with this question, in part because Section 365(p) is "not a model of clarity." *In re Garaux*, 2012 WL 5193779, at *2 (Bankr. N.D. Ohio, Oct. 19, 2012). Bankruptcy treatises have noted the split on the issue. *See* § 11:18. Enforcement of the discharge—Reaffirmation of the discharged debt, 1 Bankruptcy Law Fundamentals § 11:18 ("Until Congress or a binding appellate court resolves the conflict, the debtor/lessee and the creditor/lessor must follow the view of the local bankruptcy court."). This difficulty is confounded by the fact that the "legislative history of BAPCPA does not address new subsection(p) specifically." *Thompson v. Credit Union Financial Group*, 453 B.R. 823, 827 (W.D. Mich. 2011).

Chief Judge Taylor held that the "better reading" that was consistent with canons of statutory construction, is that a debt under a lease assumption agreement under Section 365(p)(2) need not be separately reaffirmed under Section 524(c). AR 257. In reaching this conclusion, the bankruptcy court began by finding that a plain language analysis of the statutes was inconclusive.[4] Accordingly, Chief Judge Taylor applied canons of statutory interpretation and found *inter alia* that: (1) the specific provisions of Section 365 arguably controlled over the general provisions of Section 524; (2) the statutory scheme of the Bankruptcy Code as a whole supported that reaffirmation was not required for the lease assumption to survive discharge; (3) close judicial supervision is not required of all reaffirmation decisions, suggesting that Congress would allow personal property lease assumptions without judicial supervision; (4) Congress did not require reaffirmation disclosures relevant to consumer personal property leases when it amended reaffirmation disclosure provisions in the BAPCPA; (5) Section 362(h)(1)'s use of disjunctive phrasing such as "either" and "or" indicates that 524(c) reaffirmation and 365(p) lease assumption are independent actions; (6) Pre-BAPCPA understanding of the meaning and consequences of lease assumption lends support that Congress intended that assumption created a post-petition obligation; (7) the absence of Court approval of Section 365(p)(2) did not compel a different conclusion; and (8) a statute should not be interpreted to render it nonsensical or superfluous.

The Court begins its analysis by reviewing the two competing judicial views on this issue. Several courts across the country have concluded that reaffirmation is required under Section 524(c) in order for a lease assumption to survive discharge. These courts

---

[4] As Chief Judge Taylor explained, nothing in Section 365(p) or Section 524 expressly limits assumption—meaning that it becomes a post-petition personal obligation—with conditions that it be affirmed by the court through the reaffirmation process. Nonetheless, Section 524, entitled "Effect of Discharge," states that an agreement in relation to dischargeable debt is enforceable only if it complies with the discharge provisions in the statute. AR 257.

have emphasized the Bankruptcy Code's policy rationale favoring debtor protection and providing debtors with a "fresh start." *See Thompson*, 453 B.R. at 828.[5]  By entering into lease assumption agreements under Section 365(p) that "fresh start" is compromised by the release of consequential rights, protections, and benefits. *See In re Garaux*, 2012 WL 5193779, at *4.  These courts emphasize that this "fresh start" should not be relinquished without judicial oversight through the reaffirmation process. *Thompson*, 453 B.R. at 828 ("It would be inconsistent for a Chapter 7 debtor to be able to bypass judicial approval of an assumption while such approval is required in the contexts of other types of bankruptcies.").  *See also In re Creighton*, 427 B.R. at 30 (emphasizing the *consumer protection* purpose of the BAPCPA).  Furthermore, some courts have found that the plain language of Section 365(p) supports requiring Section 524(c) reaffirmation.  "Section 365(p)(2) uses the language of assumption, but the assumption is not self-executing . . . . Rather, [Section] 365(p) says that, after certain conditions are satisfied, the liability under the lease *will be assumed*, suggesting that *more is needed* for assumption of liability." *Thompson*, 453 B.R. at 827-28.  The "more is needed" indicated to the *Thompson* Court that compliance with the Section 524(c) reaffirmation procedures was also required. *Id.* Indeed, these courts have emphasized that Section 524(c) applies because lease assumption agreements entered under Section 365(p)(2) are a species of reaffirmation agreement.  *In re Creighton*, 427 B.R. at 28.

Another line of cases holds that reaffirmation is not required in order for a lease assumption agreement to be enforced post-discharge.  These cases emphasize that Section 365(p) does not explicitly require reaffirmation under Section 524(c) and that Congress would have so stated if that had been its intention.  *See, e.g.*, *In re Ebbrecht*, 451 B.R. at 247 ("[H]ad Congress intended for leases to be both assumed under Section 365(p) and

---

[5]  In *Thompson v. Credit Union Financial Group*, 453 B.R. 823 (W.D. Mich. 2011), the district court reversed the bankruptcy judge's conclusion that reaffirmation was not required for a lease assumption agreement to be enforceable post-discharge.

reaffirmed under Section 52, it would have said so, but again, has not."); *In re Bailly*, 522 B.R. 711, 716 (Bankr. M.D. Fla. 2014) ("Congress easily could have referenced § 524(c) if it desired debtors to follow that procedure in addition to the lease assumption procedure."). Moreover, these courts reason that Section 365(p)(2) would be rendered superfluous if 524(c) reaffirmation was required. *See In re Bailly*, 522 B.R. at 715 ("Why create § 365(p)(2) at all if Congress intended to require a separate reaffirmation agreements to assume a lease? Why not just require the debtor to reaffirm a lease after the Chapter 7 trustee does not timely assume it?"). Further, they emphasize that anomalous results could result by imposing a Section 524 reaffirmation requirement, including that:

> [A]ssumption of a lease under Section 365(p) binds the debtor to the lease terms and the discharge has no effect on the debtor's assumed obligation. Under the logic of [requiring reaffirmation], a lessor would have no ability to enforce a lease agreement assumed by the debtor in the event of a subsequent default. This interpretation would render section 365(p) a nullity and would create an absurd result.

*In re Mortensen*, 444 B.R. 225, 230 (Bankr. E.D.N.Y. 2011). *See also In re Bailly*, 522 B.R. at 716 ("[i]f reaffirmation agreements must accompany lease assumptions, a lessor could face the unenviable position of being bound by a lease assumption—which does not require judicial approval—but having its reaffirmation agreement denied by the court.").

Statutory construction requires that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *See In re Perlman*, 468 B.R. at 441 (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)). The Court finds that a plain language analysis does not provide a definitive answer on this issue. Toyota argues that the plain language of 365(p)(2) authorizes consumer debtors to assume personal property leases and couples that assumption with debtors' liability. *See* 11 U.S.C. § 365(p)(2)(B) (dictating the "liability under the lease will be assumed by the debtor and not by the estate."). According to Toyota that plain language shows congressional intent that

assumption of liability survives discharge. On the other hand, some courts have emphasized that Section 365(p) states that "liability under the lease *will be assumed*," indicating a further step that necessarily must take place via Section 524(c) reaffirmation. *See Thompson*, 453 B.R. at 828.

That Courts on both sides of this issue have found plain language to support their respective conclusions is revelatory of the fact that plain language alone cannot resolve this dispute. *Compare Thompson*, 453 B.R. at 828, 829 ("[Section] 365(p) says that, after certain conditions are satisfied, the liability under the lease *will be* assumed, suggesting that more is needed for assumption of liability.") (internal quotations omitted); *In re Creighton*, 427 B.R. at 248 *with Williams v. Ford Motor Credit Co.*, LLC, No. 15-CV-14201, 2016 WL 2731191, at *6 (E.D. Mich. May 11, 2016) ("Section 365(p) specifically addresses lease assumption agreements and does not expressly require that the underlying debt be reaffirmed under Section 524(c). Requiring such reaffirmation would be adding a step that Congress chose not to include . . ."); *In re Perlman*, 468 B.R. at 441 ("If Congress had intended the reaffirmation agreement and lease assumption provisions to be interconnected or interchangeable, it would not have made the two procedures so different and incompatible."). Accordingly, the Court looks to statutory interpretation principles and relevant case law to resolve the dispute.

### C. Reasons to Not Require Section 524(c) Reaffirmation

#### 1. 365(p) is Rendered Superfluous

Chief Judge Taylor concluded that "[a] statute should not be interpreted so as to render it superfluous or nonsensical; [Mather's] ride through arguments results in both." In reaching this conclusion, the bankruptcy court relied on statutory interpretation canons of construction such that statutes should be construed to give effect to "all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corey v. United States*, 556 U.S. 303, 314 (2009). In *In re Mortensen*, the bankruptcy judge distinguished

*Eader* and *Creighton*—which required reaffirmation—on the basis that these cases failed to recognize that a Section 365(p) lease assumption binds the debtor to the lease terms and that the discharge has no effect on the debtor's assumed obligation.  444 B.R. at 230.  "Under the logic of *Eader*, a lessor would have no ability to enforce a lease agreement assumed by the debtor in the event of a subsequent default" rendering section 365(p) a "nullity" because "[c]ongress could not have intended to give the debtor the right to assume a lease, but not be bound by its terms upon assumption." *Id.*

There would be no purpose to Section 365(p) if a reaffirmation agreement was required.  As the Court in *Bailly* stated:

> Why create § 365(p)(2) at all if Congress intended to require a separate reaffirmation agreements [sic] to assume a lease? Why not just require the debtor to reaffirm a lease after the Chapter 7 trustee does not timely assume it? 'A statute should be construed to give effect to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.' [Corley v. United States, 556 U.S. 303, 304 (2009)]. Distinguishing between lease assumption and reaffirming a debt allows debtors to do exactly what § 365(p)(2) allows – to decide whether or not to assume the lease, thus initiating the back-and-forth negotiating process. Requiring compliance with reaffirmation procedures renders Congress's choice to add § 365(p)(2) effectively meaningless – a debtor simply could submit a reaffirmation agreement and forego the § 365(p)(2) process entirely.

*Bailly*, 522 B.R. at 716.  The Court agrees with this reasoning. If Congress intended to require reaffirmation, there is no reason Congress set forth an extensive 365(p) process for lease assumptions if it could have just explicitly made lease assumptions part of the reaffirmation process.  This rationale weighs strongly against a rule requiring reaffirmation.

### 2.    Anomalous Result

Next, several aspects of requiring reaffirmation produce an anomalous result when viewed with the full context of Section 365(p).  As stated above, the court in *Mortensen* found that requiring reaffirmation would create an absurd result.  444 B.R. at 230 ("[A]ssumption of a lease under Section 365(p) binds the debtor to the lease terms and the

discharge has no effect on the debtor's assumed obligation. Under the logic of [requiring reaffirmation], a lessor would have no ability to enforce a lease agreement assumed by the debtor in the event of a subsequent default. This interpretation would render section 365(p) a nullity and would create an absurd result."). Further, requiring reaffirmation leads to an anomalous result in that a lessor could wind up being *bound* by a lease assumption—through 365(p) which does not require judicial approval—but the reaffirmation—which does require judicial approval—could be denied by the court. *See Bailly*, 522 B.R. at 716.

The bankruptcy judge bolstered this argument by reference to the difference in economics between a true lease and a secured transaction. AR 264, pg. 18.[6] A secured creditor has a lien on the debtor's property and may secure repayment of the loan with a lien on the asset—a consumer who buys a car owns the car subject to a lien securing repayment of the car loan, and thus the lender retains an *in rem* right to recover payment. In contrast, a lessor agrees to make an asset available for possession and use in exchange for periodic payments. *See* 12 C.F.R. § 213.2(e)(1)-(2). The economic value of, for example, a leased car is "calculated based on its ability to generate a stream of income in exchange for use and, typically, the declining value of the car through normal use." Consequently, giving the car back to the lessor does not equate into compensation for missed rental income. AR 264, pg. 18. The bankruptcy judge reasoned that:

> Once the economics of a vehicle lease are considered squarely, it is clear that an assumption that does not create personal liability for ongoing lease payments gives the lessor nothing; the lessor does not get realizable compensation for a debtor's use of the leased vehicle or for the decline in vehicle value while a debtor uses the car. The argument renders § 365(p)(2) nonsensical.

This reasoning is persuasive. Section 365(p) is meant to allow the lessee to retain assumption of the leased asset. To do so, the lessor necessarily must retain a right to go

---

[6] After the record on appeal was filed in the District Court, Toyota noticed the record was missing two pages (pages 17 and 18). The Bankruptcy Court subsequently corrected the record, but did not renumber the record. The Court will refer to these pages as AR 264, pg. 17 and 18.

after the lessee in personal liability, otherwise there would be no incentive to enter into a 365(p) assumption with the lessee. This sentiment was echoed by the Court in *In re Garaux* which ultimately held that reaffirmation was required, but wisely observed that its ruling would "render much of § 365(p) meaningless" because "it is unlikely that creditors will accept a lease assumption that does not revive a debtor's liability, the requirements of Section 524(c) will supplant those of § 365(p)." 2012 WL 5193779, *4.

The bankruptcy judge also raised another timing issue. Reaffirmation must take place before a discharge pursuant to Section 524(c)(1). In contrast, Section 365(p)(2) is not so limited and the negotiation of a Section 365(p)(2) assumption can take place after a discharge. *See* 11 U.S.C. § 365(p)(2)(C) ("The stay under section 362 and the injunction under section 524(a)(2) shall not be violated by notification of the debtor and negotiation of cure under this subsection."). As such, the court's reasoning—"If successful reaffirmation must precede discharge, it makes no sense to allow negotiation of a § 365(p)(2) assumption after discharge if it is valid only if coupled with a reaffirmation that is an impossibility"—is persuasive and shows a further nonsensical result that results from requiring reaffirmation. AR 265.

These absurdities and anomalous results weigh strongly in favor of a rule that does not require reaffirmation to go hand-in-hand with the Section 365(p) lease assumption.

### 3. Section 362(h)'s Use of the Disjunctive

The bankruptcy court also referred to Sections 362(h) and 521(a)(6)[7] to support its rule to not require reaffirmation. Section 362(h)(1) provides:

> In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired

---

[7] The bankruptcy court cited to Section 521(a)(6) in its heading, but later referred to Section 521 to discuss the use of the disjunctive regarding the the failure to comply with a secured loan "or" lease obligation. This citation is minimally persuasive, when Section 362(h)(1)'s use of the disjunctive directly addresses the reaffirmation and assumption processes at issue in this instant case.

lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)--

(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, **either** redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, **or** assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

(B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

11 U.S.C. § 362(h)(1) (emphasis added). According to Chief Judge Taylor, the "either" before the options to retain the property and the "or" between the description of 524(c) reaffirmation and Section 365(p) assumption provides a clear indication that reaffirmation and assumption are independent actions. To support this analysis, the bankruptcy court cited to *In re Dumont*, 581 F.3d 1104, 1113-14 (9th Cir. 2009) which stated:

As before, the debtor must "file timely any statement of intention required under section 521(a)(2)." *Id.* But now, he must "indicate in such statement that" he will do one of four things: surrender, redeem, reaffirm, or assume an unexpired lease. *Id.* To be specific, he must indicate "either" surrender "or" retention; if he chooses the latter, he must indicate "either" redemption, reaffirmation, "or" assumption. *Id.* "Either" means "[t]he one or the other." American Heritage Dictionary of the English Language 572 (4th ed.2000). Although traditionally it has referred to only two items, the standards of the English language have degenerated such that either is now acceptable with more than two clauses. *See id.* at 572–73 (usage note). However, the "either ... or" disjunction has always meant that one of the listed alternatives must be satisfied.

The Court agrees that the use of the disjunctive is indicative of independent actions that can take place without each other. If retention is chosen, the statute indicates that

17cv2380-GPC-AGS

reaffirmation "or" assumption are viable options. *See Dumont*, 581 F.3d at 1113-14 (he must indicate 'either' reaffirmation, 'or' assumption.). If one were to view assumption and reaffirmation to be bound together, then the bankruptcy code and Ninth Circuit would have stated reaffirmation "and" assumption, to indicate the interdependence between the two sections. The Court finds that the use of the disjunctive in Section 362(h) is a further statutory reason to dispense with a requirement for reaffirmation of a Section 365(p) lease agreement.

### 4.    Judicial Supervision

Chief Judge Taylor made two findings regarding judicial supervision: (1) that the bankruptcy code does not require close judicial supervision of *all* reaffirmations and (2) the absence of Court approval of Section 365(p)(2) lease assumption does not require a different conclusion.

First, the bankruptcy court found that the Bankruptcy Code does not require close judicial supervision of *all* reaffirmations. Consequently, it was not incongruous to assume that Congress would allow personal property lease assumptions without judicial supervision. AR 259. At oral argument before the bankruptcy court, Mather conceded that Congress did not take a consistent position that judicial supervision is *always* required when a debtor converts a pre-petition obligation to a post-petition debt. One example of this inconsistency is that Congress does not require judicial supervision when a pro se consumer debtor assumes a consumer loan secured by real property. *See* 11 U.S.C. § 524(c)(6)(B) (Subparagraph (A), which requires judicial approval, "shall not apply to the extent that such debt is a consumer debt secured by real property").[8] The presence of one

---

[8] The bankruptcy court also referred to a modification of Section 524 in BAPCPA which arguably made reaffirmation more creditor friendly, including a provision that made reaffirmation of credit union transactions less likely to survive judicial review by eliminating the presumption of "undue hardship." *See* 11 U.S.C. § 524(m)(2). The Court affords this determination minimal weight in its analysis, finding that it is only tangentially related to the issues being considered.

17cv2380-GPC-AGS

part of Section 524 that does not require judicial approval is indicative of congressional willingness to not *always* require reaffirmation.

Second, Chief Judge Taylor also found that the absence of court approval for Section 365(p) lease assumptions did not compel a different conclusion. AR 264. To begin, the court reasoned that reaffirmation does not always require judicial oversight. Next, the bankruptcy court distinguished Section 365(p) assumptions, which creates obligations of the *debtor* and is generally payable from assets not generally available to pre-petition creditors, from Section 365(a) assumptions—which require court approval. The court reasoned that Section 365(a) assumptions merited judicial involvement because they involved the estate, debtor in possession, chapter 13 debtor, or reorganized debtor and have a "direct impact on the availability of assets to pay other creditors, particularly in a chapter 7 context." AR 264. Finally, the bankruptcy court observed that Section 365(b) provides non-debtor parties with the right for cure and adequate assurance, but that Section 365(p) gives the lessor the unilateral right to decide whether to allow assumption and establish conditions, thus judicial oversight of a lessor's unilateral right was not warranted.

This conclusion is supported by the Court's holding in *In re Perlman* concluding that Court has "no judicial role to play in § 365(p)(2) lease assumption." 468 B.R. at 441. There, criticizing the practice of filing Section 365(p)(2) lease assumption agreements as "reaffirmation agreements" under Section 524, the court concluded that doing so wasted the "time and resources" of the court and the parties by implicating unnecessary hearings. *See id.* The Court finds this reasoning to be persuasive and in line with the conclusion that Section 365(p) leases do not require judicial approval.

### 5. Specific Provisions Control

The bankruptcy judge found that the specific provisions of Section 365(p) "arguably" controlled over the general provisions of Section 524. AR 258. This canon of statutory construction emphasizes that "[i]t is a commonplace of statutory construction

17cv2380-GPC-AGS

that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). This is particularly true where "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* (citing *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). The bankruptcy court viewed Section 365 as the "more specific provision" because it deals specifically with personal property leases. In contrast, Section 524(c) is a broader statute addressing only the impact of discharge. The Court agrees that Section 365(p) is a more specific provision, but observes that "reasonable minds can differ as to which statute is more specific." AR 258. As Mather points out, Section 524 may actually contain more procedural steps and more words than that required in Section 365(p). Dkt. No. 16 (observing that Section 524—which contains 2,591 words—is over twenty times longer than Section 365(p)). Nevertheless, Section 365(p) deals with a narrower issue—assumption of leases when a trustee does not seek to assume—than Section 524 which applies more generally to post-discharge liabilities. Accordingly, the Court finds that Section 365(p) is a more specific provision than Section 524(c) and that this canon of construction weighs in favor of not requiring reaffirmation.

### 6. BAPCPA Amendments

Chief Judge Taylor held that the fact that Congress did not require reaffirmation disclosures relevant to consumer personal property lease transactions when it significantly amended the reaffirmation disclosure provisions of Section 524(k) strongly suggests that Congress did not intend to require a debtor to both assume a lease under Section 365(p)(2) and also obtain reaffirmation under Section 524. AR 261. The bankruptcy court observed that BAPCPA simultaneously added both Section 365(p) and Section 524(k),[9] which outlines the detailed disclosures required for reaffirmation. In doing so, the court observed

---

[9] The bankruptcy court did acknowledge that the requirement for conspicuous disclosure of the amount reaffirmed could apply in both the lease and secured loan contexts. AR 260 (citing 11 U.S.C. § 524(k)(2)-(3)(C)).

that the vast majority of Section 524(k)'s provisions applied only as to secured transactions, rather than personal property leases. *See, e.g.* 11 U.S.C. § 524(k)(2)-(3)(E) (requiring conspicuous disclosure of an "annual percentage rate"); 11 U.S.C. 524(k)(3)(E)(i)-(ii) (referencing "credit" and "open end credit plan" as defined in Section 103 of the Truth in Lending Act).

Next, the bankruptcy court observed that the TILA "requires specific disclosures in relation to consumer personal property leases that are the counterpart to those required in consumer credit transactions. For example, it requires detailed disclosure about liabilities at lease termination . . . But no such disclosures were required by BAPCPA and new § 524(k)(1)." AR 261. Instead, the BAPCPA amendments only reference credit transactions portions of the Truth in Lending Act and do not reference provisions related to a consumer lease transaction. Consequently, the bankruptcy court reasoned that the fact that Congress did not require reaffirmation disclosures relevant to consumer personal property lease transactions when it amended Section 524(k) in BAPCPA suggests that Congress did not intend to require that a debtor both assume a lease under Section 365(p)(2) and obtain reaffirmation under Section 524. *Id.* To Chief Judge Taylor, it was "illogical to assume that Congress would require reaffirmation in a personal property lease assumption situation yet require not a single disclosure relevant to a consumer lease beyond the amount assumed." *Id.*

This reasoning is supportive, to a limited extent, of a rule not requiring reaffirmation. As the bankruptcy court acknowledged, Section 524(k)'s requirement to disclose could broadly be applied in the lease context. *See, e.g.*, *In re Creighton*, 427 B.R. at 28 (rejecting substantially similar argument and concluding that "[t]he disclosures required by § 524(k) are flexible enough to accommodate a wide variety of debts."). Moreover, the Court does not view the lack of a reference to TILA's consumer lease transaction provisions in the BAPCPA disclosure amendments to significantly support that Congress did not intend to

require reaffirmation in this context.  Accordingly, this portion of the bankruptcy court's decision is only somewhat persuasive.

### 7.   Coherent Statutory Scheme

The bankruptcy court held that it was "not inconsistent with anything in the Bankruptcy Code to assume that Congress would create more than one method for allowing claims to survive discharge" as the bankruptcy code (1) identifies numerous claims that are never dischargeable; (2) allows creditors under certain circumstances to obtain a determination that a particular claim is not appropriate for discharge; (3) Section 365 involves a method to convert dischargeable executory contract claims into non-dischargeable post-petition claims through assumption.  AR 258.  This follows from the canon of construction to construe statutory language as a whole. *See, e.g.*, *Duparquet Huot & Moneuse Co. v. Evans*, 297 U.S. 216, 218 (1936).

The Court affords this canon of construction minimal weight.  Just as the plain language analysis is inconclusive, the Court finds that the statutory scheme of the bankruptcy code as a whole could be viewed to support both requiring and not requiring reaffirmation. Accordingly, the Court finds that this canon of construction weighs neither in favor nor against requiring reaffirmation.

### D.   The *Thompson* Court's View and its Progeny Cases

In *Thompson*, District Judge Jonker reversed a bankruptcy court by holding that Section 524 reaffirmation was required for a Section 365(p) post-discharge enforcement to be enforced post-discharge.  Specifically, Judge Jonker concluded that "[t]o set aside the discharge protection, a lessor must obtain not only the debtor's assumption but also Bankruptcy Court approval under the reaffirmation provisions of section 524(c), or other appropriate Code provisions."  453 B.R. at 824.  The bankruptcy court had held that assumption under Section 365(p) created a post-petition liability outside the scope of the discharge that did not require reaffirmation. *Id.* at 826.  The *Thompson* court reasoned that

nothing in Section 365(p) or the plain language explanation on the bankruptcy discharge form provided notice to Chapter 7 petitioners that their lease assumption lacks discharge protection. *Id.* Next, the court emphasized that Section 365(p) emphasized possession of property, not ultimate liability after discharge. *Id.* According to that court's reading, the language in Section 365(p)(2) stating "liability under the lease will be assumed" indicated that "more is needed for assumption of liability." *Id.* at 828. Pointing to Section 524's "web of protections for debtors," the *Thompson* court emphasized that requiring reaffirmation was in line with the "policy of giving debtors a fresh start." *Id.*

Other courts have reasoned similarly to *Thompson* to find that reaffirmation was required. One of the first cases to address this issue was *In re Creighton*, 427 B.R. 24, 27 (Bankr. D. Mass. 2007), which held that a lease assumption agreement constituted an "agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title" under Section 524(c), such that Section 365(p)(2) lease assumptions were merely a "species of reaffirmation agreement." *Id.* The *Creighton* court emphasized the congressional purpose of consumer protection in making this determination and that it would be strange if Congress removed a category of reaffirmation agreements from the Section 524(c) requirements without a stated reason. *Id.* at 30. *See also In re Eader*, 426 B.R. 164, 165 (Bankr. D. Md. 2010) (emphasizing that BAPCPA increases the protection afforded to debtors by adding additional requirements). Reviewing these cases, the court in *Garaux* observed that "[b]y executing either a lease assumption or a reaffirmation agreement, debtors are releasing substantial and consequential rights, protections and benefits. For this reason, the court can find no reason that a debtor should be provided more protection, via § 524(c), under a reaffirmation agreement than a lease assumption." *In re Garaux*, 2012 WL 5193779, at *4.

Chief Judge Taylor offered three distinct reasons to discount the *Thompson* line of

22

cases. First, the court criticized the *Thompson* court's assumption that judicial supervision was an absolute requirement for all reaffirmations. AR 266. Second, she concluded that the *Thompson* court had failed to consider the commonly understood consequences of lease assumption and that the court had ignored the economics of lease assumption in crafting a rule that would render Section 365(p)(2) without meaning, functionally creating a "surplus statute with nonsensical terms." *Id.* Finally, the bankruptcy court observed that the *Thompson* court required reaffirmation but never explained "why this is appropriate where the reaffirmation disclosures created concurrently with § 365(p)(2) are almost entirely irrelevant to personal property lease transactions. Concluding that *Thompson* was unreliable, the bankruptcy court held that reaffirmation was not required in this instant case. The Court agrees that a lease assumption agreement under § 365(p) remains enforceable following discharge even if the lease agreement was not reaffirmed and the Court will accordingly elect not to follow the *Thompson* holding.

### E. Analysis

The policy implications of requiring reaffirmation must be weighed against the fact that interpreting Section 365(p) to also apply Section 524(c)'s requirements renders the former statute superfluous and leads to anomalous results. On one hand, a rule that does not require reaffirmation is arguably less protective of bankrupt lessees because it strips away the potential protection of judicial review provided by the reaffirmation process. Doing so may somewhat threaten the "fresh start" being offered by the bankruptcy proceeding.

On the other hand, the Court must also consider the impact of requiring reaffirmation. Doing so renders the Section 365(p) statutory process superfluous—If Congress had intended to require reaffirmation then it could have simply required the negotiation and assumption process of Section 365(p) to be a part of the reaffirmation procedures. *See In re Bailly*, 522 B.R. at 716. Moreover, requiring reaffirmation could

lead to strange results.  A lessor and lessee could agree to a lease assumption under Section 365(p) and yet a lessor would have no ability to enforce a lease agreement assumed by the debtor in the event of subsequent default.  *In re Mortensen*, 444 B.R. at 230.  Or a lessor could become *bound* by a lease assumption that the court declines to approve.  *See In re Bailly*, 522 B.R. at 716.  Moreover, a lessor—who agrees to make an asset available for possession in exchange for periodic payments—would have no economic incentive to undertake a Section 365(p) lease assumption with a bankrupt lessee.

Mather argues that the line of case law holding that reaffirmation is not required is built upon the foundations of the now reversed *Thompson* bankruptcy court opinion.  *See, e.g.*, *In re Mortensen*, 444 B.R. 225 (Bankr. E.D.N.Y. January 19, 2011); *In re Farley*, 451 B.R. 235 (Bankr. E.D.N.Y. 2011); *In re Ebbrecht*, 2011 WL 1793272 (Bankr. E.D.N.Y. May 11, 2011).  This argument fails to acknowledge that recent cases have continued to adopt the underlying reasoning of these decisions even after the reversal of the *Thompson* bankruptcy court's opinion.  *See, e.g.*, *Williams v. Ford Motor Credit Co., LLC*, 2016 WL 2731191 (E.D. Mich. 2016); *In re Hayden*, No. 13-10865, 2014 WL 1612164, at *4 (Bankr. D. Vt. Apr. 22, 2014); *In re Perlman*, 468 B.R. 437, 441 (Bankr. S.D. Fla. 2012).

Another argument Mather makes on appeal is that Section 365(p)'s failure to use the word "personal" to modify "liability" means that she has no liability resulting from her assumption of the lease unless this liability was reaffirmed on appeal. To support this proposition, Mather points to caselaw in insurance law, *Foresyth v. Jones*, 57 Cal. App. 4th 776, 781-782 (1997), foreclosure law, *In re the Marriage of Walker*, 240 Cal. App. 4th 986, 994 (2015, and ride thru in bankruptcy law, *McClellan Fed. Credit Union v. Parker*, 139 F.3d 668 (9th Cir. 1998).  These cases and this argument are inapposite to the instant issue as they do not involve the intersection of Section 365(p) and Section 524(c). Moreover, no court requiring reaffirmation has ever relied on such a theory.  *See, e.g.*,

*Thompson*, 453 B.R. at 823; *In re Garaux*, 2012 WL 5193779, *In re Eader*, 426 B.R. at 164, *In re Creighton*, 427 B.R. at 24.

The same reasons discount Mather's attempt to differentiate between the "liability" and "enforceability" of a claim. *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017) does not involve an analysis of Section 365(p) and any attempt to extrapolate a difference between liability and enforcement from this case is inapposite from the instant legal question. Furthermore, such a theory has never been the basis of any of the case law requiring reaffirmation which instead emphasize the language of the statute and the policy rationale of the bankruptcy code to provide a "fresh start" to debtors.

Finally, Mather cites to Bankruptcy Judge Mann's February 14, 2018 order denying a reaffirmation agreement in *In re Talley*, Case No. 17-05752-MM7, Dkt. No. 19 (Bankr. S.D. Cal. Jan. 18, 2018) to argue that the Court allowed "ride thru," allowing the debtor to keep the vehicle as payments were made but removing "personal liability." Dkt. No. 16 at 11 n. 3. *Talley* is inapposite to the facts of this case, in that the Court determined the lease at issue in that case to actually be a secured transaction, and thus did not involve the process set forth in Section 365(p).

For the reasons described above, the Court **AFFIRMS** Chief Judge Taylor's conclusion that Section 365(p) does not require reaffirmation. In reaching this conclusion, the Court finds particularly persuasive that: (1) Section 365(p) is rendered superfluous by requiring reaffirmation; (2) requiring reaffirmation leads to anomalous results; (3) Section 362(h)'s use of the disjunctive indicates that assumption and reaffirmation are independent actions; (4) judicial supervision is not required of all reaffirmations and the lack of judicial approval makes sense in the context of the Section 365(p) which allows a lessor the power to choose whether to allow assumption; and (5) Section 365(p) is more specific than Section 524(c). The Court finds less compelling (1) that amendments to BAPCPA delineate between secured transactions and lease

assumptions and (2) that the bankruptcy scheme as a coherent whole supports this conclusion. Accordingly, the Court concludes that Section 524(c) reaffirmation is *not* required for a Section 365(p) lease to be enforced post-discharge.

**F.    Compliance with Section 365(p)—Was the Lease Assumed?**

The Court next considers whether Toyota obtained a valid assumption of the lease. Appellant argues that the Lease Assumption Agreement did not comply with writing and time requirements that she asserts are "mandatory" under 365(p)(2). Dkt. No. 9 at 30. Appellant asserts that it was error for the bankruptcy court to ignore (1) the requirement for Mather to have provided an initial writing requesting lease assumption under 365(p)(2)(A) and (2) that Mather acted on December 5, 2016 well past the thirty day requirement established in 365(p)(2)(B).

Chief Judge Taylor found that although there was "arguably" a written notification based on Mather's indication in her statement of intention that she intended to enter into a reaffirmation agreement with Toyota, the court did not find that sufficient to constitute a written notification regarding assumption of leases within the meaning of § 365(p)(2)(A). AR 269. However, the bankruptcy court concluded that written notification was "not absolutely required" as Toyota had the right to waive the writing requirement. AR 269-270.

Section 365(p)(2) provides that:

> **(A)** If the debtor in a case under chapter 7 is an individual, the debtor may notify the creditor in writing that the debtor desires to assume the lease. Upon being so notified, the creditor may, at its option, notify the debtor that it is willing to have the lease assumed by the debtor and may condition such assumption on cure of any outstanding default on terms set by the contract.

> **(B)** If, not later than 30 days after notice is provided under subparagraph (A), the debtor notifies the lessor in writing that the lease is assumed, the liability under the lease will be assumed by the debtor and not by the estate.

**(C)** The stay under section 362 and the injunction under section 524(a) (2) shall not be violated by notification of the debtor and negotiation of cure under this subsection.

This process providing for a "consensual, non-judicial procedure for the assumption of a personal property lease by a debtor if the lease has been rejected or not timely assumed by the chapter 7 trustee under 365(d)" involves a distinct process described in *In re Ebbrecht*, 451 B.R. 241, 244 (Bankr. E.D.N.Y. 2011), as follows:

> In what some refer to as a "handshake," the debtor must first offer in writing to the lessor[7] to assume the lease obligations, the timing of which is not established by the Bankruptcy Code or Rules. The lessor then must decide whether to accept such offer, the timing of which is also not specified. If the lessor determines that it is willing to allow the debtor to assume the lease, it will then notify the debtor of this decision, and may condition such assumption on cure of any outstanding defaults on terms set by the contract. Section 365(p) does not provide that the lessor is under any obligation to accept the debtor's offer.
>
> Once the debtor has notified the lessor of its desire to assume the lease under Section 365(p)(2)(A), Section 365(p)(2)(C) provides the lessor with a safe harbor to notify debtor it has accepted the request to assume the lease and to negotiate a cure, without violating either the automatic stay of Section 362 or the discharge injunction under Section 524(a)(2). The third and final step required by the statute is that a writing between the lessor and the debtor be signed to memorialize the terms of the lease assumption.

*In re Ebbrecht*, 451 B.R. 241, 244–45 (Bankr. E.D.N.Y. 2011) (internal citations omitted).

As the bankruptcy court found, the written notification requirement accomplishes three distinct purposes: (1) alert the lessor that debtor is interested in an assumption—the "handshake"; (2) provides the lessor with safe harbor protections under Section 365(p)(2)(C) so that the lessor may enter into negotiations without violating the automatic stay or discharge order; and (3) a filed written statement forestalls the termination of an automatic stay under Section 362(h). AR 269. Chief Judge Taylor found that the writing requirement was only relevant to be a passport to safe harbor and a method to preserve the automatic stay, and was not an absolute requirement for assumption to occur.

17cv2380-GPC-AGS

Consequently, the lessor negotiated at its own risk in the event that a debtor denied initiating the procedure or extending the handshake and could waive this requirement. *See Williams*, 2016 WL 2731191, at *8 (allowing waiver of procedural requirements of Section 365(p) where lease assumption was eventually entered into by both parties). The Court agrees that in a case where an assumption agreement is ultimately signed, the lack of a written notification does not invalidate it, and that Toyota had the right to waive the requirement of a writing in the lease negotiation process. AR 270.

Next, the bankruptcy court concluded that the lease was properly assumed despite the fact that Mather did not notify Toyota in writing that the lease was assumed within 30 days as required by Section 365(p)(2)(B). Section 365(p)(2) requires that the debtor notify the lessor in writing that "the lease is assumed no later than 30 days after the lessor notifies the debtor that it is willing to have the lease assumed. The Court affirms this conclusion because the 30-day period is for the benefit of the lessor and can be waived by the lessor if it so chooses to engage in the assumption. *See Williams v. Ford Motor Credit Company, LLC*, 2016 WL 2731191, at *8 ("When Appellants executed the Agreement after the 30-day notice period, Ford – and not Appellants – had the right to reject the executed Agreement. But Ford accepted the Agreement without objection; Ford therefore chose to waive any right it may have had to reject the Agreement for Appellants' noncompliance with 11 U.S.C. § 365(p)(2)(B).").

Finally, significant policy rationales support allowing Toyota to waive these requirements to validly enforce a lease assumption. As the bankruptcy court observed, "the policy of allowing a debtor to assume a personal property lease obligation, particularly for something as critical as an automobile, is not well served if assumption is impossible in the absence of strict compliance with the writing and timing requirements." AR 270. Notably, while the debtor loses the right to compel lease assumption if the lease is not assumed timely, the lessor takes on a risk when it proceeds with an assumption in the

absence of an oral request.  Where both lessor and debtor remain willing to proceed on an oral request for assumption, and where the lessor remains willing to allow assumption after 30 days, it does not make sense to establish strict requirements with the statute that would deprive the debtor of the opportunity to assume.  Accordingly, as a policy matter, it makes sense to allow Toyota to waive the written notification and timing requirements.

Accordingly, the Court **AFFIRMS** the bankruptcy court determinations that Toyota obtained a valid lease assumption because the written notification and the 30-day requirement could be waived by Toyota.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that the November 16, 2017 Bankruptcy Court Order is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated:  May 23, 2018

Hon. Gonzalo P. Curiel
United States District Judge